T.C. Memo. 2011-58

UNITED STATES TAX COURT

ERIN N. HELLWEG, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 14502-08, 14523-08,     Filed March 9, 2011.
          14525-08, 14527-08.

      Ps held ownership interests in and controlled an S
corporation.  Ps' Roth IRAs formed a DISC which entered into
a commission agreement with the S corporation.  For excise
tax purposes only, R recharacterized commission payments
from the S corporation to the DISC as distributions to Ps
followed by Ps' contribution of the proceeds to their Roth
IRAs.  R determined that Ps were each liable for:  (1)
Excise taxes on excess contributions to their Roth IRAs
under sec. 4973, I.R.C.; (2) an accuracy-related penalty
under sec. 6662(a), I.R.C.; and (3) additions to tax under
sec. 6651(a)(1), I.R.C., for failing to file the appropriate
information returns.

_____

      [1]Cases of the following petitioners are consolidated
herewith:  Tara L. Slaight, docket No. 14523-08; Tyler D.
Hellweg, docket No. 14525-08; and Zachary D. Slaight, docket No.
14527-08.

Held:  The transactions must be treated consistently for sec. 4973, I.R.C., and income tax purposes.

Held, further, the commission payments from Ps' S corporation do not represent excess contributions to Ps' Roth IRAs.

Held, further, Ps are not liable for excise taxes under sec. 4973, I.R.C.

Held, further, Ps are not liable for accuracy-related penalties under sec. 6662(a), I.R.C.

Held, further, Ps are not liable for additions to tax under sec. 6651(a)(1), I.R.C.


Neal J. Block, Robert S. Walton, Brian C. Dursch, and John M. Carnahan III, for petitioners.

Peter N. Scharff, for respondent.


MEMORANDUM OPINION


NIMS, Judge:  This matter is before the Court on petitioners' motion for summary judgment under Rule 121 (Motion).

For each petitioner, respondent determined the following deficiencies, penalty, and additions with respect to his or her Federal income tax:

| Year | Deficiency[1] | Penalty Sec. 6662A[2] | Additions to Tax Sec. 6651(a)(1) |
|------|-----------|-------------|---------------------|
| 2004 | $6,038 | $1,207.60 | -- |
| 2005 | 12,038 | -- | $3,010 |
| 2006 | 16,877 | -- | 4,219 |

[1]It is not apparent from the record why respondent determined identical deficiencies, penalties, and additions to tax for all four petitioners when the amounts distributed by ADF International Sales Co. to ENH International Sales Corp., TDH International Sales Corp., TLS International Sales Corp., and ZDS International Sales Corp. were not identical.

[2]Respondent determined in the alternative that if petitioners are not liable for the accuracy-related penalty under sec. 6662A, then they are liable for the accuracy-related penalty under sec. 6662(a).

Respondent concedes that petitioners are not liable for the accuracy-related penalty under section 6662A.  Following that concession, the issues for consideration are:  (1) Whether petitioners are liable for excise taxes under section 4973; (2) whether petitioners are liable for accuracy-related penalties under section 6662(a); and (3) whether petitioners are liable for additions to tax under section 6651(a)(1).  Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

<u>Background</u>

For the purposes of deciding the Motion only, the following facts are derived from the affidavits and exhibits submitted by the parties and the parties' pleadings.

Petitioners Erin Hellweg, Tyler Hellweg, and Zachary Slaight resided in Missouri when they filed their petitions.  Petitioner Tara Slaight resided in Texas when she filed her petition.

Petitioners held ownership interests in and controlled American Dehydrated Foods, Inc. (ADF), an S corporation which began operations in 1978 and manufactured ingredients for the pet food and specialty feed industries. At all relevant times, ADF was owned by 15 related shareholders, including petitioners.

Before the years in issue petitioners each established a Roth IRA. The Roth IRAs each subscribed to 25 percent of the previously unissued stock of ADF International Sales Co. (ADF International), which elected to be treated as a domestic international sales corporation (DISC). Each of the Roth IRAs subsequently contributed its ownership interest in ADF International to a C corporation in exchange for all of that corporation's previously unissued stock; following the contributions, Erin Hellweg's Roth IRA owned ENH International Sales Corp. (ENH), Tyler Hellweg's Roth IRA owned TDH International Sales Corp. (TDH), Tara Slaight's Roth IRA owned TLS International Sales Corp. (TLS), and Zachary Slaight's Roth IRA owned ZDS International Sales Corp. (ZDS).

During the years in issue the following series of transactions (Transaction) occurred.

(1)     ADF paid DISC commissions to ADF International on ADF's qualified export sales (ADF commission payments). ADF reported qualified export sales of $10,308,552 in 2004, $8,325,792 in 2005, and $7,365,851 in 2006. ADF

International reported for those years DISC commissions of $465,392, $334,315, and $297,052 and taxable income of $463,557, $333,119, and $294,657, respectively. ADF deducted the payment of these DISC commissions to ADF International.

(2)     As a result of its status as a DISC, ADF International was deemed to have made distributions of DISC income to ENH, TDH, TLS, and ZDS (the C corporations) totaling $40,327 in 2004, $19,595 in 2005, and $17,333 in 2006. ADF International also made actual distributions of DISC income to the C corporations totaling $400,400 in 2004, $398,600 in 2005, and $320,400 in 2006.

The C corporations reported and paid Federal income tax on the dividend income attributable to both the deemed and actual distributions. For 2004 to 2006 ENH reported dividend income of $100,152, $99,916, and $80,510 and paid Federal income taxes of $22,063, $21,943, and $15,349, respectively. TDH reported dividend income of $100,152, $99,916, and $80,510 and paid Federal income taxes of $22,063, $21,943, and $15,349, respectively. TLS reported dividend income of $100,152, $99,935, and $80,540 and paid Federal income taxes of $22,063, $21,949, and $15,359, respectively.

ZDS reported dividend income of $100,153, $99,935, and $80,540 and paid Federal income taxes of $22,063, $21,949, and $15,359, respectively.

(3)     Each of the C corporations then distributed some amount as a dividend to the Roth IRA that owned it. The record is unclear as to the years for which the C corporations issued dividends and the amounts.

Respondent audited ADF's and petitioners' 2004, 2005, and 2006 returns. At the conclusion of the ADF audit, respondent issued letters to ADF and its shareholders stating that there would be no changes to ADF's 2004, 2005, and 2006 returns.

The audit of petitioners' returns, however, resulted in respondent's issuing to petitioners statutory notices of deficiency. In the notices of deficiency, respondent determined that payments from ADF to the C corporations each represented: (1) A distribution from the recipient C corporation to the petitioner whose Roth IRA owned that C corporation and (2) a subsequent contribution by that petitioner to his or her Roth IRA.[2] Respondent determined that the amounts deemed contributed to the Roth IRAs were excess contributions subject to the section

---

[2]Respondent has since amended his characterization of the Transaction, as discussed infra. Also, the notices of deficiency issued to Erin Hellweg, Tyler Hellweg, and Zachary Slaight contain errors in that they each address the "Payments from American Dehydrated Foods, Inc. to TLS International Sales Corporation" rather than to ENH, TDH, and ZDS, respectively.

4973 excise tax. For the 2004 tax year, respondent also determined that petitioners were liable for a section 6662A penalty (understatement of tax relating to involvement in a reportable transaction) or, alternatively, for a section 6662(a) penalty (underpayment of tax due to negligence or disregard of rules or regulations). For the 2005 and 2006 tax years respondent determined that petitioners were liable for additions to tax under section 6651(a)(1) for failure to file Forms 5329, Additional Taxes on Qualified Plans (Including IRAs) and Other Tax-Favored Accounts.

On June 13, 2008, petitioners filed petitions with this Court. On October 22, 2008, petitioners filed a motion to consolidate their cases, which the Court granted. On October 22, 2008, petitioners also filed the Motion.

## Discussion

### I. Respondent's Objection to Exhibits

Respondent objected to exhibits K through CC of petitioners' Second Supplemental Brief in Support of the Motion. These exhibits contain information document requests made by respondent when he audited ADF's and petitioners' returns. Petitioners claim the exhibits show that discovery is unnecessary because respondent has already had an opportunity to obtain all the relevant information petitioners have. We have not examined these exhibits, and our finding that summary judgment is

appropriate does not depend upon what documents respondent requested during the audits. Accordingly, respondent's objection is denied on the grounds of mootness.

II. Summary Judgment

Summary judgment may be granted when there is no genuine issue of material fact and a decision may be rendered as a matter of law. Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of proving there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). The adverse party must set forth specific facts showing that there is a genuine issue for trial and may not rest on mere allegations or denials in his pleadings. Rule 121(d).

Respondent contends that there is an issue as to what petitioners' respective ownership interests in ADF were and therefore whether petitioners exercised control over ADF. Petitioners have, however, conceded that they controlled ADF through direct and indirect ownership.

Respondent contends that there is an issue as to whether petitioners' purpose in arranging the Transaction was to avoid the limit on IRA contributions. But since respondent has deemed

the Transaction valid for income tax purposes (discussed _infra_), he cannot now contend that the Transaction lacked a business purpose.

Respondent contends that there is an issue as to what each petitioner's Roth IRA contribution limits were during the years in issue. The amounts of the contribution limits are not in issue because the payments from ADF exceed even the maximum possible (i.e., unreduced) contribution limit under section 408A(c)(2). Thus, even if we were to decide in favor of respondent, the extent to which those payments exceed the actual contribution limits is merely a computational matter.

Respondent contends that material factual issues remain as to whether the ADF commission payments were qualified DISC commissions, whether DISC commissions may not be recharacterized as excess contributions under section 4973, and whether the ADF commission payments were, in substance, excess contributions to petitioners' Roth IRAs. However, these are legal issues that do not require trial and can appropriately be decided as a matter of law.

Respondent nevertheless insists that summary judgment is not appropriate because the facts underlying these legal issues are in dispute. Respondent does not specify what those disputed facts are and claims he is unable to do so because he has not had a reasonable opportunity to conduct discovery.

While respondent may require discovery to obtain the evidence necessary to resolve the factual issues that are in dispute, the absence of discovery should not prevent him from being able to identify what those disputed issues are. The declaration of petitioners' return preparer, Mr. Renkel, details each leg of the Transaction, and respondent has not contested any part of Mr. Renkel's account of the Transaction. Since there is no disagreement as to what happened, we do not see why discovery is necessary. Respondent's professed need for discovery is nothing more than a fishing expedition. As we have previously warned: "tax cases are to be thoroughly investigated before-- rather than after--the notice of deficiency is issued." Westreco, Inc. v. Commissioner, T.C. Memo. 1990-501.

Accordingly, we find and hold that there is no genuine issue of material fact and that judgment may be rendered as a matter of law.

## III. Section 4973 Excise Taxes

Section 4973 imposes a 6-percent excise tax on excess contributions to IRAs.

Respondent contends that petitioners used the Transaction as a vehicle to improperly shift value into their Roth IRAs. Respondent contends that, for excise tax purposes only, the Transaction was therefore formalistic and not substantive. Respondent thus contends that the ADF commission payments

represented, in substance, excess contributions to petitioners' Roth IRAs. Respondent now argues that the Transaction should be recharacterized as a distribution from ADF to petitioners followed by petitioners' contribution of the distribution proceeds to their respective Roth IRAs.

Petitioners contend that the payment of DISC dividends to a Roth IRA cannot be treated as an excess contribution because Congress specifically addressed the ownership of a DISC by an IRA when it enacted section 995(g) in response to Blue Bird Body Co. & Affiliates v. Commissioner, docket No. 1345-87 (stipulated decision entered Aug. 30, 1988).[3]

A DISC provides a mechanism for deferral of a portion of the Federal income tax on income from exports. The DISC itself is not taxed, but instead the DISC's shareholders are currently taxed on a portion of the DISC's earnings in the form of a deemed distribution. Secs. 991, 995(b)(1). This allows for deferral of taxation on the remainder of the DISC's earnings until those earnings are actually distributed, the shareholders dispose of their DISC stock in a taxable transaction, or the corporation ceases to qualify as a DISC. Secs. 995(b)(2), (c), 996(a)(1).

---

[3]Petitioners cite Blue Bird Body Co. because they contend that Congress was aware of the issues raised therein. Petitioners cannot, and do not, cite the case for any precedential value because it was disposed of by stipulated decision.

A DISC sometimes does not generate the income it reports on its returns and might otherwise not be recognized as a corporate entity for tax purposes if it were not a DISC. Addison Intl., Inc. v. Commissioner, 90 T.C. 1207 (1988), affd. 887 F.2d 660 (6th Cir. 1989); Jet Research, Inc. v. Commissioner, T.C. Memo. 1990-463; see also sec. 1.992-1(a), Income Tax Regs. "The DISC may be no more than a shell corporation, which performs no functions other than to receive commissions on foreign sales made by its parent." Thomas Intl. Ltd. v. United States, 773 F.2d 300, 301 (Fed. Cir. 1985); Foley Mach. Co. v. Commissioner, 91 T.C. 434, 438 (1988); see also Jet Research, Inc. v. Commissioner, supra.

Because Blue Bird Body Co. & Affiliates v. Commissioner, supra, involved a DISC owned by a taxpayer's tax-exempt section 501 profit-sharing trust, petitioners argue that Congress was fully aware of the benefits of DISC ownership by tax-exempt entities and chose to address the problem by enacting section 995(g), which subjects tax-exempt entities owning DISC stock to the unrelated business income tax. Petitioners argue that the fact that Congress could have prohibited transactions involving DISCs owned by IRAs but chose not to do so indicates that Congress was comfortable with IRAs' holding DISC stock once section 995(g) was enacted.

We disagree with petitioners. <u>Blue Bird</u> is not mentioned anywhere in the legislative history of section 995(g), and there is no indication that Congress enacted the statute in response to that case.

Even if we considered section 995(g) to be a response to <u>Blue Bird</u>, Congress could not have addressed the excess contribution issue because the issue was not raised in that case. In <u>Blue Bird</u> the taxpayer paid commissions to a DISC owned by the taxpayer's profit-sharing plan. The Internal Revenue Service (Service) found the transaction offensive because in the absence of section 995(g) the income tax on the deemed distributions from the DISC would also be deferred. The Service never raised the issue of whether the commissions represented excess contributions subject to an excise tax and sought only to prevent complete deferral of the income tax on the DISC's income.

Petitioners' argument is further unconvincing because it is logically erroneous. In arriving at their conclusion that Congress' inactivity validates the Transaction here, petitioners commit the fallacy of denying the antecedent. Quite obviously, if Congress had enacted legislation (treating DISC dividends paid to IRAs as excess contributions subject to section 4973), then all such distributions would be treated as excess contributions. While the contrapositive (i.e., if not every such distribution is treated as an excess contribution, then Congress must not have

enacted such legislation) must be true, the inverse is not necessarily so. Therefore, petitioners' inference that Congress' failure to enact such legislation means that all DISC dividends paid to an IRA cannot be treated as excess contributions does not follow. Congress' inaction, assuming it was deliberate, may merely represent a choice to determine whether such distributions produce an excess contribution on a case-by-case basis according to the facts and circumstances. Not every silence is pregnant. See Ill. Dept. of Pub. Aid v. Schweiker, 707 F.2d 273, 277 (7th Cir. 1983).

Respondent argues that the facts and circumstances of the present case do warrant a determination that the ADF commission payments represent excess contributions to petitioners' Roth IRAs, as outlined in Notice 2004-8, 2004-1 C.B. 333.

Notice 2004-8, 2004-1 C.B. at 333, states that where a taxpayer's preexisting business enters into transactions with a corporation owned by the taxpayer's Roth IRA, in certain cases "The acquisition of shares, the transactions or both are not fairly valued and thus have the effect of shifting value into the Roth IRA." The notice identified three ways in which the Service would attempt to challenge these transactions: (1) Apply section 482 to allocate income from the corporation to the taxpayer, the preexisting business, or other entities under the control of the taxpayer; (2) assert that under section 408(e)(2)(A) the

transaction gives rise to one or more prohibited transactions between a Roth IRA and a disqualified person described in section 4975(e)(2); and (3) assert that the substance of the transaction is that the amount of the value shifted from the preexisting business to the corporation is a payment to the taxpayer, followed by a contribution by the taxpayer to the Roth IRA and a contribution by the Roth IRA to the corporation.

Section 482 authorizes the Secretary to allocate income among commonly controlled entities.  Classification of the transaction as a prohibited transaction under section 408(e)(2)(A) results in a deemed distribution of the IRA's assets to the taxpayer that is included in the taxpayer's income and is subject to a 10-percent additional tax.  See secs. 72(t), 408(e)(2)(B).  In cases where the Service attacks the substance of the transaction, the Notice states:

> the Service will deny or reduce the deduction to the Business; may require the Business, if the Business is a corporation, to recognize gain on the transfer under § 311(b); and may require inclusion of the payment in the income of the Taxpayer (for example, as a taxable dividend if the Business is a C corporation). * * * [Notice 2004-8, 2004-1 C.B. at 333; emphasis added.]

Thus, Notice 2004-8, supra, clearly assumes that an income tax adjustment will be made no matter which of the three avenues of attack the Service chooses.

Service notices do not carry the force of law, see Standley v. Commissioner, 99 T.C. 259, 267 n.8 (1992), affd. without

published opinion 24 F.3d 249 (9th Cir. 1994), and are therefore not accorded deference under Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843-844 (1984); see United States v. Mead Corp., 533 U.S. 218 (2001). Although they may be entitled to deference under Skidmore v. Swift & Co., 323 U.S. 134 (1944), see United States v. Mead Corp., supra, we need not decide whether Notice 2004-8, supra, should be given Skidmore deference because the Transaction does not fall within the scope of the notice.

In contrast to the transactions described in Notice 2004-8, supra, respondent has apparently deemed the Transaction to be fairly valued. Pursuant to Notice 2004-8, supra, reallocation of income or recharacterization of the Transaction should have resulted in: (1) Refund of income taxes paid by the C corporations on the dividend income from ADF International, (2) reduction or denial of the deductions claimed by ADF for the ADF commission payments, (3) additional passthrough S corporation income to petitioners from ADF, and (4) income to petitioners under section 1368 to the extent, if any, the distributions they were deemed to have received from ADF exceeded their bases in ADF. Respondent made no such adjustments and, in fact, issued a no-change letter to ADF. Respondent made no section 482 adjustment. Respondent could not assert the Transaction was a prohibited transaction under section 408(e)(2)(A) because of our

decision in <u>Swanson v. Commissioner</u>, 106 T.C. 76 (1996) (discussed <u>infra</u>).  In the absence of fraud or an illegal purpose behind the Transaction, respondent could not challenge the substance of the Transaction for income tax purposes because to do so would require the existence of ADF International to be disregarded, which would frustrate the congressional intent behind the creation of the DISC regime.  See <u>Addison Intl., Inc. v. Commissioner</u>, 90 T.C. 1207 (1988); <u>Jet Research, Inc. v. Commissioner</u>, T.C. Memo. 1990-463.

In the absence of a challenge to the Transaction using any of the three methods delineated in Notice 2004-8, <u>supra</u>, respondent tries a variation of the notice's third approach. Respondent argues that the Transaction, while being valid for income tax purposes, lacks substance for excise tax purposes only.

While respondent's position that the Transaction simultaneously does and does not have substance seems rather incongruous, respondent argues that inconsistent treatment is permissible because the excise tax and income tax regimes are completely independent of one another.  Respondent argues that "The safe harbor rules [of section 1.994-1(a)(1), Income Tax Regs.] affect the treatment of the commissions solely for income tax purposes, not for other purposes, such as the excise tax provisions at issue in these cases."  In support of that proposition, respondent directs our attention to Rev. Rul. 81-54,

1981-1 C.B. 476.  Respondent claims that "Under Revenue Ruling 81-54, commissions paid to [a] DISC by * * * [a corporation] were treated as gifts for gift tax purposes despite the fact that for income tax purposes the commissions could qualify under the safe harbor rules."

In Rev. Rul. 81-54, supra, three shareholders of a corporation formed a DISC.  The shareholders transferred gifts of their DISC stock to trusts created for the benefit of their children, and the corporation subsequently entered into a commission agreement with the DISC.  The revenue ruling determined that annual DISC commissions paid by the corporation would be treated as continuing "gifts of profits that would otherwise flow to * * * [the corporation] in the absence of the agreement with the DISC" as each commission payment was made. Id., 1981-1 C.B. at 477.

Rev. Rul. 81-54, supra, does not address the income tax consequences of the recharacterization of the DISC commissions. However, respondent's position that a transaction may be treated differently under different tax regimes seems, on the surface, to have some support in cases which have held that the income and gift tax statutes are not read in conjunction with one another (i.e., are not in pari materia).  See United States v. Davis, 370 U.S. 65 (1962); Farid-Es-Sultaneh v. Commissioner, 160 F.2d 812 (2d Cir. 1947), revg. 6 T.C. 652 (1946).

In Farid-Es-Sultaneh, the taxpayer sold stock which she had acquired pursuant to a prenuptial agreement in exchange for the release of her marital rights.  In calculating her income tax liability on the sale, the taxpayer treated the acquisition as a purchase and used as a basis the stock's fair market value at the time she acquired the stock (i.e., cost basis).  The Commissioner treated the acquisition as one by gift and determined the taxpayer's basis to be that of the transferor (i.e., carryover basis) instead.

The Court of Appeals for the Second Circuit noted that the transfer was defined by the gift tax statutes as a gift.  The Revenue Act of 1932, ch. 209, sec. 503, 47 Stat. 247, provided that "Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this title, be deemed a gift".  For gift tax purposes, the release of the taxpayer's marital rights could not be considered adequate and full "consideration in money or money's worth" because section 804 of the same act, 47 Stat. 280, expressly provided that it was not.  Farid-Es-Sultaneh v. Commissioner, supra at 814.  Although that statute was an estate tax statute, the Supreme Court had held in Merrill v. Fahs, 324 U.S. 308 (1945),

that it also extended to the gift tax regime since the gift and estate tax statutes were to be construed together.

For income tax purposes, however, the Court of Appeals observed that there was no statute comparable to section 804 of the act and held that the income and gift tax statutes do not relate to the same matter. Therefore, in the absence of a statute treating the release of marital rights as inadequate consideration for income tax purposes, the court declined to depart from "the usual legal effect to proof that a transfer was made for a fair consideration". Farid-Es-Sultaneh v. Commissioner, supra at 814. The court thus held that the taxpayer had acquired the stock by purchase despite the fact that the transferor could have been liable for gift tax if the gift tax had been in effect at the time of the transfer.

In United States v. Davis, supra, the Supreme Court held that the taxpayer's transfer of appreciated property to his former wife under a marital settlement agreement was a taxable event. In deciding that the exchange of the stock for the release of the former wife's marital rights could not be a gift, the Court stated that it was not constrained by the gift and estate tax statutes and thereby approved of the Court of Appeals' holding in Farid-Es-Sultaneh. Id. at 69 n.6.

The present case, however, is distinguishable in that there is no excise tax statute which necessitates the Transaction's

being treated differently for excise tax purposes.  As the

Supreme Court explained in Davis:

> Cases in which this Court has held transfers of property in
> exchange for the release of marital rights subject to gift
> taxes are based not on the premise that such transactions
> are inherently gifts but on the concept that in the
> contemplation of the gift tax statute they are to be taxed
> as gifts.  * * *  [Id.]

To the contrary, the excise tax statute in issue here, section

4973, compels consistent treatment of the Transaction because

that statute is intertwined with and inseparable from the income

tax regime.  Section 4973(a) imposes the 6-percent excise tax on

the amount of the excess contributions.  As to a traditional IRA,

an "excess contribution" is defined in part as the excess of the

amount contributed over the amount allowable as a deduction under

section 219.  Sec. 4973(b).  As to a Roth IRA, an "excess

contribution" is defined in part as the excess of the amount

contributed over the amount allowable as a contribution under

section 408A(c)(2) and (3).  Sec. 4973(f).  Section 408A(c)(2)

sets the initial Roth IRA contribution limit as the maximum

amount allowable as a deduction under section 219 reduced by the

aggregate contributions to other individual retirement plans.

Section 408A(c)(3) reduces that amount once the taxpayer's

adjusted gross income exceeds a threshold amount.  Thus, the

section 4973 excise tax cannot be determined without regard to

the taxpayer's income tax because sections 219 and 408A(c)(2) and

(3) are income tax provisions and section 408A(c)(3) in particular refers to the taxpayer's adjusted gross income.

The Transaction being valid for income tax purposes, it must also be valid for purposes of section 4973. Since respondent has made no section 482 adjustment which would result in distributions from ADF to petitioners for income tax purposes, the ADF commission payments cannot be treated as distributions to petitioners for purposes of the section 4973 excise tax. Therefore, the ADF commission payments do not constitute excess contributions to petitioners' Roth IRAs.

This case is distinguishable from Michael C. Hollen, D.D.S., P.C. v. Commissioner, T.C. Memo. 2011-2, where we sustained the Service's determination that a "dividend" paid by a corporate taxpayer to its employee stock ownership trust (ESOT) represented an excess contribution to the account of a participant in the taxpayer's related employee stock ownership plan (ESOP). There, the taxpayer sought a declaratory judgment that the ESOP and the ESOT were qualified for income tax purposes under section 401(a). The ESOT had borrowed money from the ESOP to purchase stock in the taxpayer. The ESOT then used the proceeds of a $200,000 "dividend" from the taxpayer to partially repay the loan and allocated an equivalent amount of stock to the accounts of the ESOP participants. Most of that stock allocation went to the account of Dr. Hollen, who was the principal shareholder, an

employee, and a corporate officer of the taxpayer. Dr. Hollen was also the ESOP's administrator and the ESOT's trustee.

Pursuant to section 1.415-6(b), Income Tax Regs. (which authorizes the Service "in an appropriate case, considering all of the facts and circumstances, [to] treat transactions between the plan and the employee or certain allocations to participants' accounts as giving rise to annual additions"), the Service treated $150,339 of the $200,000 "dividend" as an annual addition to Dr. Hollen's account. We held that the Service did not abuse its discretion to make that recharacterization, because Dr. Hollen used the loan and the associated "dividend" to generate a deduction for the taxpayer for the principal payments on the loans without any corresponding income recognition by either the taxpayer or the ESOT. The resulting tax savings increased the value of the stock held by the ESOT to Dr. Hollen's benefit. Because the annual addition exceeded the section 415(c) contribution limit, we upheld the Service's determination that, for income tax purposes, the ESOP and the ESOT were not qualified trusts under section 401(a) and therefore not tax exempt under section 501(a).

Respondent does not contest the characterization of the Transaction for income tax purposes, and therefore we decide an entirely different and much narrower issue: whether respondent may characterize a transaction inconsistently for excise tax

purposes. We have not been asked to and do not decide what the proper treatment of the Transaction is for income tax purposes. Although we held that an excess contribution to a retirement plan had been made in Hollen, respondent's approval of the Transaction for income tax purposes compels a different result in the present case. Whereas the Service properly used an income tax regulation to recharacterize the Hollen transaction for income tax purposes, respondent's position that the Transaction is substantive for income tax purposes undermines his attempted use of the substance-over-form doctrine to recharacterize the Transaction for excise tax purposes.

Respondent nevertheless argues that petitioners should be liable for the section 4973 excise tax because the Transaction was not a type of IRA investment that Congress intended to permit.

Congress has enumerated the types of transactions which IRAs are prohibited from making in section 408(e)(2) through (5) and (m). No part of the Transaction here is prohibited under any of those provisions.

Section 408(e)(2)(A) provides that an IRA loses its exempt status if it engages in any transaction prohibited by section 4975. Section 4975(c)(1) prohibits a specific list of self-dealing transactions between a plan and a disqualified person. We have previously held that a similar transaction was

not a prohibited transaction under section 4975(c)(1)(A) or (E). See Swanson v. Commissioner, 106 T.C. 76 (1996).

In Swanson, the taxpayer was the sole shareholder of an existing S corporation. The taxpayer arranged for the organization of a DISC (Worldwide), and one of his IRAs (IRA #1) subscribed to the DISC's original issue stock. The DISC subsequently received commission payments from the S corporation and paid dividends to the taxpayer's IRA.

We held that the IRA's acquisition of DISC stock could not have been a prohibited transaction under section 4975(c)(1)(A) because the DISC was not a disqualified person at that time. We explained that

> The stock acquired in that transaction was newly issued-- prior to that point in time, Worldwide had no shares or shareholders. A corporation without shares or shareholders does not fit within the definition of a disqualified person under section 4975(e)(2)(G). It was only after Worldwide issued its stock to IRA #1 that petitioner held a beneficial interest in Worldwide's stock, thereby causing Worldwide to become a disqualified person under section 4975(e)(2)(G). * * * [Id. at 88; fn. refs. omitted.]

We also held that the DISC's payment of dividends to the IRA was not a prohibited transaction under section 4975(c)(1)(E) because "there was no such direct or indirect dealing with the income or assets of a plan, as the dividends paid by Worldwide did not become income of IRA #1 until unqualifiedly made subject to the demand of IRA #1." Id. at 89.

Similarly, the acquisitions of ADF International stock by petitioners' Roth IRAs were also not prohibited transactions under section 4975(c)(1)(A), (B), or (C) because ADF International was not a disqualified person at the time of the stock acquisitions. The C corporations' payment of dividends to the Roth IRAs was not a prohibited transaction under section 4975(c)(1)(D), (E), or (F) because the dividends were not income of the Roth IRAs until they were received by the Roth IRAs.

The Transaction is also not prohibited under section 408(e)(3) because that provision deals with borrowing under or by use of an individual retirement annuity. Section 408(e)(4) is also inapplicable because no petitioner has pledged any portion of a Roth IRA as security for a loan. Section 408(e)(5) is not relevant because no part of any Roth IRA assets has been used to purchase an endowment contract. Section 408(m) does not apply because no Roth IRA invested in a collectible.

Contrary to respondent's contention, the Transaction is not a type of investment that Congress has expressly forbidden. To add it to that list of statutorily prohibited transactions would amount to judicial legislation.

Furthermore, even if we were to decide that Congress intended to prohibit this type of transaction, we question whether imposition of the section 4973 excise tax would be appropriate. Participation in one of the above-mentioned

statutorily prohibited transactions results in a deemed distribution from the IRA.  See sec. 408(e)(2)(B), (3), (4), (5), (m)(1).  Such a distribution is included in the taxpayer's gross income and is subject to the section 72(t) 10-percent additional income tax rather than the section 4973 excise tax.

While we are aware that Congress clearly intended to limit the amounts of annual contributions to IRAs by enacting section 4973, our holding here does not negate that limitation.  Our decision does not prevent the Service from recharacterizing the Transaction consistently for income tax and excise tax purposes.  Nor does it prevent the Service from asserting that an excess contribution was made when petitioners' Roth IRAs subscribed to the stock of ADF International if that stock had been undervalued.[4]  In fact, Notice 2004-8, 2004-1 C.B. at 333, contemplates the possibility that "The acquisition of shares * * * [is] not fairly valued".

For these reasons, we hold that the ADF commission payments do not represent excess contributions to petitioners' Roth IRAs.  Accordingly, we will grant petitioners summary judgment as to the issue of their liability for excise taxes under section 4973.

---

[4]ADF International received hundreds of thousands of dollars in DISC commissions each year from a well-established business, and a 25-percent share in a company receiving such a steady stream of income should have been worth a large amount.

IV.  Section 6662(a) Penalty

Section 6662(a) and (b)(1) and (2) imposes an accuracy-related penalty of 20 percent on the portion of an underpayment attributable to negligence, disregard of rules or regulations, or a substantial understatement of income tax.  Because petitioners are not liable for excise taxes under section 4973, they did not make an underpayment of tax and are therefore not liable for the section 6662(a) accuracy-related penalty.

Accordingly, we will grant petitioners summary judgment as to the section 6662(a) penalty.

V.  Section 6651(a)(1) Additions to Tax

Section 6651(a)(1) imposes a 5-percent addition to tax for each month or portion thereof a required return is filed after the prescribed due date.  Taxpayers are required to file a Form 5329 for each year they have excess contributions to their IRA. See Frick v. Commissioner, T.C. Memo. 1989-86, affd. without published opinion 916 F.2d 715 (7th Cir. 1990).  Because petitioners did not make excess contributions to their Roth IRAs, they were not required to file Forms 5329 and are therefore not liable for additions to tax under section 6651(a)(1).

Accordingly, we will grant petitioners summary judgment as to the section 6651(a)(1) additions to tax.

We have considered all of the parties' contentions, arguments, requests, and statements.  To the extent not discussed herein, we conclude that they are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Appropriate orders and decisions will be entered granting petitioners' Motion for Summary Judgment</u>.