LYNCH, Circuit Judge, dissenting.
With great respect for my colleagues in the majority, I dissent because I think the Tax Court's opinion must be affirmed. The effect of the majority decision will be to bless a device to eliminate the contribution limits Congress has imposed on Roth IRAs. The decision will cost the public fisc millions of dollars in tax revenue. This is an important case, and in my view the majority gets it wrong and violates rules of construction.
Congress, in creating DISCs, did not intend them to be catch-all tax avoidance devices. Congress did not intend DISCs to cut through common law tax doctrines under any and all circumstances. Congress intended exporters to use DISCs to defer corporate income tax, and the Benensons did not use the DISC in this case for that purpose. They instead used it as a shield against the application of the time-honored substance over form doctrine in an effort impermissibly to funnel sums of money in the millions of dollars each year into their Roth IRAs. Congress has never blessed such an arrangement, and the transaction at issue flouts Congress's intent to limit Roth IRA contributions. The Commissioner was correct to recharacterize the transaction. The majority is incorrect to hold that, because Congress intended a limited tax benefit through the use of a DISC, Congress intended, without saying so, to implicitly set aside its limit on Roth IRA contributions, an entirely different tax benefit.
A. The Substance of this Transaction
The substance over form doctrine is "best ... thought of as a tool of statutory interpretation."
*524 Santander Holdings USA, Inc. v. United States, 844 F.3d at 15, 21 (1st Cir. 2016). The IRS's recharacterization of a transaction must be upheld when the transaction "lies outside the plain intent of the statute." Id. (quoting Gregory v. Helvering, 293 U.S. 465, 470, 55 S.Ct. 266, 79 L.Ed. 596 (1935) ); see also Knetsch v. United States, 364 U.S. 361, 365, 81 S.Ct. 132, 5 L.Ed.2d 128 (1960) ("[T]he question for determination is whether what was done, apart from the tax motive, was the thing which the statute intended." (quoting Gregory, 293 U.S. at 469, 55 S.Ct. 266 ) ).
Courts analyze various factors when determining whether, under common law tax doctrines, a transaction is consistent with congressional intent. These factors include whether the entities involved have no business purpose, Gregory, 293 U.S. at 469-70, 55 S.Ct. 266 ; whether related entities were used to shift tax liabilities between related taxpayers, see Palmer v. Comm'r, 354 F.2d 974, 975 (1st Cir. 1965) ; whether the transaction used a circuitous route or intermediary entities for the sole purpose of decreasing the taxpayer's liability, Minn. Tea Co. v. Helvering, 302 U.S. 609, 613, 58 S.Ct. 393, 82 L.Ed. 474 (1938) ; and whether the entities involved assumed any risk, see Merck & Co. v. United States, 652 F.3d 475, 484-85 (3d Cir. 2011).
The transaction here was tax-gaming, devoid of substance. The companies and Roth IRAs involved were all owned by members of the same family, the DISC shares were not purchased at market prices, and the sole reason for the transaction was to circumvent the contribution limits for Roth IRAs. In addition, the parties agree that JC Export and JC Holding would not exist but for this scheme, that those entities engaged in no business of any kind, and that they served no purpose other than funneling money into the Benensons' Roth IRAs.
It is equally clear that the transaction involved no risk. The majority claims that this transaction involved risk because the benefit to the Roth IRAs "is necessarily tied, at least initially, to the success and profitability of Summa Holdings' export companies." This is not accurate. If Summa Holdings becomes unprofitable, the Roth IRAs will lose nothing because the money has already been transferred to them. The purpose of this tax scheme plainly was to circumvent the Roth IRA contribution limitations, and that was accomplished as soon as JC Export paid a dividend to the Roth IRAs. The fact that Summa Holdings needed to reach a certain level of success before engaging in this scheme does not mean that the transaction involved economic risk.
James III and Clement purchased the outstanding shares of JC Export for $1500 each and then received millions in dividends from those shares over the next few years. In effect, the Benensons jammed millions of dollars into their Roth IRAs at a time when their incomes were too high for them to contribute to the IRAs at all, and that money can now be invested and distributed tax-free. This does not remotely resemble a real transaction of economic substance. In fact, Summa Holdings paid dividends to its shareholders, who then contributed to the Roth IRAs.
Had this transaction used a C corporation (or an LLC or almost any other type of entity) to pass money from Summa Holdings into the Roth IRAs, recharacterization would clearly be appropriate. See Repetto v. Comm'r, 103 T.C.M. (CCH) 1895, 2012 WL 2160440, at *9 (2012) ; Block Developers LLC v. Comm'r, 114 T.C.M. (CCH) 68, 2017 WL 3078319, at *11 (2017) ; Polowniak v. Comm'r, 111 T.C.M. (CCH) 1132, 2016 WL 758360, at *8 (2016). But the Benensons found a different, albeit equally brazen, way to skirt the Roth IRA
*525 contribution limitations: they used a DISC to transfer the money from Summa Holdings to the Roth IRAs. The majority views that difference-the use of a DISC-as decisive. The majority does so on the grounds that the substance over form doctrine cannot apply here because DISC commissions do not need to have economic substance, and, further, that Congress intended for Roth IRAs to own DISCs.
I disagree. The DISC here was not used for the purpose intended by Congress, but to evade the Roth IRA contribution limits. The other statutory provisions adverted to by the majority do not support its conclusion. Congress did not intend the use of DISCs to circumvent well established Roth IRA contribution limits and certainly did not say so.
B. Congressional Intent
DISCs are only insulated from the application of common law tax doctrines in certain defined and narrow ways, see Treas. Reg. § 1.994-1(a), because, without that narrow insulation, DISCs could not serve their intended purpose. DISCs are meant to reduce the tax burden on exporters by allowing them to defer corporate-level taxation. H.R. Rep. No. 92-533 (1971), as reprinted in 1971 U.S.C.C.A.N. 1825, 1832, 1872. If commissions paid from a company with qualified export revenue to a DISC needed to have economic substance, these provisions could not function as Congress intended. But we are faced with a very different issue. This case is not about whether the IRS must honor the commissions paid from Summa Holdings to JC Export for corporate income tax purposes; it is about whether the IRS must honor the Benensons' characterization of the flow of money from Summa Holdings to the Benensons' Roth IRAs for excise tax purposes.
1. The Benensons' Use of a DISC
The use of the DISC here to evade the Roth IRA limits is contrary to Congress's intended purpose for DISCs of corporate tax deferral. Because commissions paid to JC Export were immediately distributed to JC Holding and JC Holding paid corporate tax on dividends received from JC Export, the DISC itself did not result in a tax benefit to the Benenson family. The Benensons conceded as much. They stipulated that the "sole reason for entering into the Transaction at Issue ... was to transfer money into the Roth IRAs so that income on assets in the Roth IRAs could accumulate and be distributed on a tax-free basis." (emphasis added). The taxpayers made no mention of corporate tax deferral because there was none.
The only reason a DISC was used as the intermediary was as a device to attempt to escape the application of common law tax doctrines. That use is contrary to what Congress intended. Congress created DISCs to advantage exporters by giving them a corporate tax deferral benefit. See 26 U.S.C. §§ 991 - 97 ; H.R. Rep. No. 92-533 (1971), as reprinted in 1971 U.S.C.C.A.N. 1825, 1872. DISCs' exemption from common law tax doctrines in that limited area is a means of achieving that purpose, and goes no further. As a result, DISC commissions escape the use of common law tax doctrines only to the extent necessary to achieve the intended corporate tax deferral. The use of a DISC does not grant a taxpayer carte blanche to enter into artificial and economically insubstantial transactions without fear of recharacterization. Congress never said that DISCs can be used to avoid Roth IRA contribution limits or that the substance over form doctrine did not apply to DISCs. Rather, the absence of such a statement is telling. Congress does not "hide elephants in mouseholes."
*526 Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 468, 121 S.Ct. 903, 149 L.Ed.2d 1 (2001). If Congress had intended to exempt all transactions that involve DISCs and Roth IRAs from the application of longstanding common law tax doctrines, it would have said so directly.
2. Sections 246(d), 995(g), and 408A
Having established that the DISC was not used for the purpose of corporate tax deferral, we are left with the majority's argument that the substance over form doctrine cannot apply here because the separate provisions in 26 U.S.C. §§ 246(d), 995(g) and 408A supposedly evince Congress's intent that Roth IRAs be permitted to own DISCs. The Benensons never made a § 246(d) argument, so that portion of the argument is waived. See Negron-Almeda v. Santiago, 528 F.3d 15, 25 (1st Cir. 2008). In any case, this line of reasoning is invalid. The majority's argument amounts to the following: Congress took steps to make sure corporate-level tax was paid on DISC income when a traditional IRA or a C corporation was involved, and so it must have silently and implicitly approved using a DISC to circumvent Roth IRA contribution limits. The premise is accurate, but the conclusion does not follow.
First, §§ 246(d) and 995(g) were enacted for a different purpose: to eliminate tax avoidance opportunities, not to create them. Section 995(g) requires that traditional IRAs pay an unrelated business income tax on DISC commissions received. 26 U.S.C. §§ 995(g), 501(a). This was in response to an avoidance strategy where a DISC would pay a dividend to a traditional IRA in order to avoid corporate income tax. H.R. Rep. No. 101-247 (1989), as reprinted in 1989 U.S.C.C.A.N. 1906, 2895. But ending a tax avoidance scheme that was prevalent more than a decade before Roth IRAs even existed is different from expressing an intention that Roth IRAs own DISCs. That is why, in an earlier case, the Tax Court found it was "logically erroneous" to argue that Congress validated the ownership of DISC stock by Roth IRAs when it adopted § 995(g) with the aim of preventing a different tax avoidance strategy. Hellweg v. Comm'r, 101 T.C.M. (CCH) 1261, 2011 WL 821090, at *6 (2011).
The same is true of § 246(d). The dividends-received deduction exists to avoid exposing corporate earnings to multiple layers of corporate taxation. H.R. Rep. No. 92-533 (1971) as reprinted in 1971 U.S.C.C.A.N. 1825, 1903. Section 246(d) was passed in 1971 because DISCs do not pay corporate tax, so there is no risk of exposing corporate earnings to multiple layers of corporate taxation where the entity paying the dividend is a DISC. Id. This provision, enacted over twenty-five years before Roth IRAs came into existence, does not mention or relate to traditional or Roth IRAs. See 26 U.S.C. § 246(d). The fact that Congress wanted to ensure that DISC income was exposed to at least one layer of corporate income tax has nothing to do with Roth IRA contribution limits.
Even if the combination of these statutes did indicate that Congress expected Roth IRAs to own DISC stock, that would not help the Benensons' case at all. Allowing IRAs to own DISC stock is different from exempting transactions involving DISCs and IRAs from common law tax doctrines and contribution limits. Roth IRAs are allowed to own C corporations, but that does not mean that the substance over form doctrine cannot apply to C corporations used to circumvent Roth IRA contribution limits. The Tax Court has so held. See Repetto, 2012 WL 20160440 at *16. The Tax Court here never stated that Roth IRAs are prohibited from owning DISC stock. The Tax Court's holding was *527 much narrower: this specific transaction was, in substance, a dividend to shareholders followed by contributions to the Roth IRAs. Summa Holdings, Inc. v. Comm'r, 109 T.C.M. (CCH) 1612, 2015 WL 3943219, at *7 (2015).
The majority says Congress could have forbidden the transaction here if it wanted. But the absence of special legislation to forbid this evasion of statutorily set contribution limits is not permission to evade those limits. As the Tax Court stated in Hellweg, the legislation in this area "may merely represent a choice to determine whether such distributions produce an excess contribution on a case-by-case basis according to the facts and circumstances. Not every silence is pregnant." 2011 WL 821090 at *6. The Tax Court made such a fact-specific decision here, and nothing in §§ 246(d), 995(g), or 408A indicates Congress intended anything different.
All the majority shows with its §§ 246(d), 995(g), and 408A argument is that Congress may have intended to allow traditional IRAs to own DISC stock. But there is no reason to believe that the substance over form doctrine would not have applied if the Benensons had developed a scheme to circumvent the contribution limit for traditional IRAs and if, in substance, that scheme was a distribution to shareholders followed by a contribution to the traditional IRAs. There has not been a case on this issue, likely because distributions from traditional IRAs are not tax-free.
The crux of the majority's argument on this point is that the substance over form doctrine cannot apply to a DISC because the Roth IRA is allowed to own a DISC, and DISCs can avoid common law tax doctrines. That conclusion does not follow. Indeed, this line of reasoning would allow IRA contribution limits to be circumvented at will and is inconsistent with the longstanding substance over form doctrine.
As discussed below, there is no doubt that the substance over form doctrine applies even to Code-compliant transactions. The question then is whether DISC transactions are exempt from the application of the substance over form doctrine where, as here, the DISC was not used for its congressionally intended purpose. Because the exemption from common law tax doctrines is a means of providing a corporate tax deferral benefit, I do not believe transactions involving DISCs are exempt from common law tax doctrines where the DISC was not used for Congress's intended purpose.[11] The Tax Court's ruling is far more consistent with Congress's intent than is the majority's holding.
3. Congressional Inaction
The majority implies that its holding is supported by the fact that Congress has revisited the DISC provisions multiple times without addressing the Benensons' scheme. This argument was not briefed, so it is waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).
*528 Even if the argument were not waived, it depends on an assumption that is not true. The record contains no suggestion that, when Congress revisited the provisions at issue in this case, it was aware of this scheme and had proposed legislation to outlaw it. Even if legislation targeting the Benensons' scheme had been introduced in Congress, courts have repeatedly advised against construing congressional inaction as to proposed legislation as approval of the status quo. See, e.g., Aaron v. SEC, 446 U.S. 680, 694 n.11, 100 S.Ct. 1945, 64 L.Ed.2d 611 (1980).
C. Code-Compliant Transactions
The majority argues that if there is a problem here, it is for Congress to resolve. My response is that Congress created the DISC provisions against the background of decades of common law tax doctrines, under which such transactions are forbidden. The Benensons' transaction is clearly incompatible with congressional intent. Further, Supreme Court precedent is clear that an otherwise Code-compliant transaction can be recharacterized where it is inconsistent with congressional intent. Comm'r v. Court Holding Co., 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981 (1945) ; Minn. Tea Co., 302 U.S. at 613, 58 S.Ct. 393 ; Deidrich v. Comm'r, 457 U.S. 191, 195-99, 102 S.Ct. 2414, 72 L.Ed.2d 777 (1982) ; Gregory, 293 U.S. at 470, 55 S.Ct. 266 (1935) (recharacterizing a transaction because "[t]he whole undertaking, though conducted according to [the relevant Code section], was in fact an elaborate and devious form of conveyance masquerading as a corporate reorganization, and nothing else").
This circuit, other circuits, and the Tax Court agree that common law tax doctrines apply to Code-compliant transactions. See, e.g., Santander Holdings, 844 F.3d at 23 (holding that when a transaction is only designed to produce tax gains instead of real gains, "it is an act of tax evasion that, even if technically compliant, lies outside of the intent of the Tax Code and so lacks economic substance"); BB & T Corp. v. United States, 523 F.3d 461, 477 (4th Cir. 2008) (finding that the Commissioner was "entitled to recognize [the transaction] for what it was, not what [the taxpayer] professed it to be"); Repetto, 2012 WL 20160440 at *9 ("Where a series of transactions, taken as a whole ... have no 'purpose, substance, or utility apart from their anticipated tax consequences,' the transactions are not recognized for Federal tax purposes." (quoting Goldstein v. Comm'r, 364 F.2d 734, 740 (2d Cir. 1966) ) ).
I give weight to the Supreme Court's Court Holding decision and do not think we can sidestep this precedent by characterizing the opinion as "brief" and distinguish it, as one circuit has done, by saying "it's hard to say whether the Court determined that the liquidation before the sale was a sham or recharacterized the transactions based solely on their tax-minimizing effect."[12] Summa Holdings, Inc. v. Comm'r, 848 F.3d 779, 786 (6th Cir. 2017). In my view, Court Holding was clearly announcing that the substance over form doctrine applied even where the transaction was Code-compliant. In that case, the Fifth Circuit had found that the IRS could not recharacterize the transaction in question because "the purpose to escape or reduce taxation in making such a choice of *529 procedure is not unlawful. The procedure actually followed is taxable by the law applicable to it." Court Holding Co. v. Comm'r, 143 F.2d 823, 825 (5th Cir. 1944), rev'd, 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981 (1945). The Supreme Court, without stating that the transaction was a sham, overturned that decision on the grounds that "[t]o permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress." Court Holding, 324 U.S. at 334, 65 S.Ct. 707. The Benensons admit that the transactions at issue were mere formalisms created solely to alter tax liabilities; Court Holding instructs that the Commissioner may take such facts into account. Id.
For these reasons, I respectfully dissent.

While the Benensons did not benefit from any corporate tax deferral here, they could have engineered the underlying scheme to allow them to benefit from corporate tax deferral and circumvent the Roth IRA contribution limits. Had the Benensons done so, that would not alter my view as to the excise tax issue before us. The exemption from common law tax doctrines applied to DISCs, which is not even made explicit in statute, only exists to further Congress's intended purpose. Congress intended to facilitate corporate tax deferral, not the circumvention of Roth IRA contribution limits. As a result, even if the Benensons' entities had engaged in corporate tax deferral, as they did not, that still would not shield them from the application of the substance over form doctrine for excise tax purposes.

I do agree with the majority that the Sixth Circuit's decision in Summa Holdings, Inc. v. Commissioner, 848 F.3d 779 (6th Cir. 2017) has no preclusive effect here and comity does not require that we adhere to the Sixth Circuit's views, much less on the different question before us.